# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

ORIGINAL

FILED
07 NOV 19 PM 2:48

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

In the Matter of the Search of

One Global Positioning Device
in the custody of Special Donald
Webster of United States Immigration
and Customs Enforcement

**APPLICATION AND AFFIDAVIT**

**CASE NUMBER:** '07 MJ 2701

I, Donald Webster, being duly sworn depose and say:

I am a Special Agent of the United States Immigration and Customs Enforcement and have reason to believe that on the property or premises known as:

**See Attachment A which is incorporated herein by reference**

In the Southern District of California there is now concealed a certain person or property, namely:

**See Attachment B which is incorporated herein by reference**
which is:

Evidence, fruits of crime, property designed for use or used in committing criminal offenses including violations of Title 18, United States Code, Sections 922(g)(5)(A) (Illegal Alien in Possession of Firearms); Title 8, United States Code Section 1326 (Deported Alien Found in the United States); Title 8, United States Code Section 1324(a)(1)(A) (Bringing in Illegal Aliens); Title 8, United States Code Section 1324(a)(1)(A)(ii) (Transportation of Illegal Aliens); 21 U.S.C. Section 952 and 960 (Importation of Controlled Substances), and Title 21 U.S.C. Section 844(a) (Possession of Controlled Substances) and Aiding and Abetting said offenses in violation of Title 18, Untied States Code Section 2. The facts to support a finding of Probable Cause are as follows:

See attached Affidavit of Donald Webster continued on the attached sheet and made a part hereof.   X  Yes   __ No

_____
DONALD WEBSTER
Special Agent
United States Immigration and Customs Enforcement

Sworn to before me, and subscribed in my presence
11/19/07  at San Diego, California:

_____
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

## ITEM TO BE SEARCHED

The items to be searched are described as:

Garmin Etrex Legend Global Positioning device, blue in color, Serial Number 12466709, blue in color seized from RICARDO TECOMALMAN-CRUZ, FIDEL ESQUIVEL-MARIN and ROBERTO GARCIA-MESA on August 26, 2007 and in the custody of Special Agent Donald Webster of United States Immigration and Customs Enforcement.

## ATTACHMENT B
## Items to be Seized

**From the Global Positioning Device:**

Stored waypoints, logs reflecting routes of travel, maps, and other electronic information in stored memory relating to violations of Title 18, United States Code, § 922(g)(5)(A) (Illegal Alien in Possession of Firearms); Title 8, United States Code § 1326 (Deported Alien Found in the United States); Title 8, United States Code § 1324(a)(1)(A) (Bringing in Illegal Aliens; Title 8, United States Code § 1324(a)(1)(A)(ii) (Transportation of Illegal Aliens); 21 U.S.C. § 952 and 960 (Importation of Controlled Substances), and Title 21 U.S.C. § 844(a) (Possession of Controlled Substances) and Aiding and Abetting said offenses in violation of Title 18, United States Code § 2.

ORIGINAL

## AFFIDAVIT

I, Donald Webster, being duly sworn, deposes and says as follows:

1. I am a Special Agent ("SA") of the United States Immigration and Customs Enforcement, United States Department of Homeland Security (hereafter "ICE"), assigned to the Calexico, California office. I have been employed as a Special Agent of ICE since March 1, 2003. During the period of September 2001 to March 2003 I was a Special Agent with the United States Immigration and Naturalization Service (hereafter "INS") assigned to the Anti-Smuggling Unit. During the period of September 1984 to September 2001 I was a United States Border Patrol Agent during which time I worked in Calexico, California (1984 to 1989) and in El Centro, California as a Supervisor (1989 to 2001).

2. My current duties as an ICE Special Agent include the enforcement of United States immigration and narcotics laws. As an ICE Special Agent, I have participated in training programs related to controlled substances including marijuana, cocaine, methamphetamine, and heroin. I have also received training in the methods used by controlled substance traffickers to import, distribute, package and conceal controlled substances. I have participated in investigations and made arrests relating to controlled substance offenses, including for possession with intent to distribute and importation of controlled substances. As an ICE Special Agent, I have arrested more than 50 individuals for importing controlled substances into the United States at the United States ports of entry in Imperial County, California. During my 17 years as an INS and then a Border Patrol agent, I have made more than 1,000 arrests for violations of United States Immigration law, including those for illegal entry into the United States, deported aliens found in the United States, and alien transportation and smuggling. I have also arrested individuals for both alien and controlled substance offenses who have carried firearms.

3. During the course of my career as a federal agent, I have participated in the execution of a least twelve search warrants for evidence, including evidence of violations of United States controlled substance and immigration laws. I have also participated in the execution of a search warrant for cellular telephones which were analyzed by the Computer Forensic Group, Immigration and Customs Enforcement, Department of Homeland Security in San Diego, California.

4. I make this affidavit in support of an application by the United States of America for the issuance of a warrant to search the following: One Garmin Etrex Legend Global Positioning Device,

Serial Number 12466709, blue in color which was seized from RICARDO TECOMALMAN-CRUZ, FIDEL ESQUIVEL-MARIN and ROBERTO GARCIA-MESA on August 26, 2007 and in the custody of Special Agent Donald Webster of United States Immigration and Customs Enforcement, all of which constitute evidence, fruits, and instrumentalities of offenses in violations of Title 18, United States Code, § 922(g)(5)(A) (Illegal Alien in Possession of Firearms); Title 8, United States Code § 1326 (Deported Alien Found in the United States); Title 8, United States Code § 1324(a)(1)(A) (Bringing in Illegal Aliens); Title 8, United States Code § 1324(a)(1)(A)(ii) (Transportation of Illegal Aliens); Title 21 United States Code § 952 and 960 (Importation of Controlled Substances), and Title 21 U.S.C. § 844(a) (Possession of Controlled Substances) and Aiding and Abetting offenses in violation of Title 18, United States Code § 2.

5. The facts set forth in this affidavit are based on my own personal knowledge, knowledge I obtained from my investigation, knowledge and information from other law enforcement officers who have personal knowledge of the events and circumstances described herein (including from the arresting officers), information provided to me by the U.S. Immigration and Customs Enforcement Computer Forensics Group, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

**Facts Supporting Probable Cause**

6. During the afternoon of August 26, 2007, United States Border Patrol agents and California National Guard personnel assigned to the Calexico, California station were monitoring live video transmissions from remote cameras located near the United States/Mexico border. One of the areas being monitored was located approximately 12 miles east of the station and approximately one mile north of the border near the All American Canal in Imperial County, California. The live video of this area is taken by one or more video cameras mounted atop poles located near the canal. Personnel who monitor the video transmissions are known as Remote Video Surveillance operators (hereafter "video operators").

7. The area south of the canal consists of uninhabited and undeveloped desert commonly traversed by aliens making their way north in the United States. While there is a bridge that crosses the

canal in this area, the bridge itself is blocked off to traffic by pad-locked chain link gates. Chain link fences also extend approximately 15 yards in both directions from the gates on the south and north side of the canal.

8. A number of signs are posted in the immediate vicinity of the canal and on the chain-link gate and fence that say "No Trespassing," "Stay Out," "All American Canal" and "Property of the Imperial Irrigation District." There are no fences or man-made barriers along the international border in this area. Rather, the border is marked by a dirt road that runs east-west along the border. Along this dirt road are boundary markers indicating the international border. The boundary markers, which are spaced approximately one quarter of a mile apart from each other along the east-west dirt road, variously consist of two and six-feet tall concrete monuments and white plastic markers that are approximately three to four feet tall. All of the markers display writing that indicates the location of the United States/Mexico border.

9. Another dirt road leads north from this east-west border road and extends 1.2 miles north to the canal. Those traveling north on this road from the east-west border road would drive near or past a white border marker that bears the U.S. flag and says "International Boundary United States" and an orange sign that warns migrants in Spanish of the dangers they face from exposure to the elements in that area.

10. The area extending south from the border into Mexico consists of open desert for approximately two miles before reaching the Mexicali airport which is located in a sparsely developed area. The city of Mexicali, Mexico is approximately four miles to the west.

11. At approximately 4:36 p.m., a sensor activation alerted Border Patrol agents of vehicle traffic in this area between the border and the All American Canal. Video operators at the Calexico station trained their remote-controlled cameras on All American Canal and saw a 1997 Ford F-150 pickup truck that was parked a short distance south of the bridge. The video shows the truck driving eastbound out of the camera's view. Several minutes later, three men were seen walking near the truck. One of the men appeared to be scouting the area using binoculars. Another man was seen with a rifle slung over his shoulder.

12. Supervisory Border Patrol Agent Marc Battaglini responded to the area in a marked Border

Patrol vehicle with Border Patrol Agent Michael Harrington as his passenger. Border Patrol Agent Christian Diaz also responded to the area with his passenger, Border Patrol Agent Seth Sedano.

13. On arriving in the area at approximately 5:19 p.m., Battaglini observed the F-150 truck bearing Sonora, Mexico license plates traveling eastbound on a dirt road at speed of approximately 15 miles per hour. Battaglini, thereafter, activated his vehicle's emergency lights and siren. Agent Diaz, who was behind Battaglini, also activated his emergency lights.

14. After activating his emergency equipment, Agent Battaglini saw the brake lights on the truck go on briefly, but the F-150 truck continued to travel for another 40 to 50 yards before stopping. After stopping, all occupants of the F-150 remained in the truck.

15. Agent Battaglini, with weapon drawn, approached the driver's side of the F-150 while agents Diaz and Sedano approached the passengers. The front seat passenger was later identified as Esquivel and the rear seat passenger was identified as Garcia.

16. As Battaglini approached, the driver, who was later identified as Tecomalman, said in Spanish that he was a federal agent and that they were lost. Battaglini told Tecomalman, "let me see your hands" and Tecomalman complied. Battaglini told Tecomalman to open the door from the outside. Tecomalman attempted to do so but the handle would not work. Battaglini then opened the driver's door from the inside. As Battaglini opened the door, he saw a pistol in Tecomalman's waistband and a rifle on the front seat.[1] Battaglini grabbed the pistol, told Tecomalman to get out of the vehicle and Tecomalman complied.

17. Battaglini walked Tecomalman to the back of the truck and as he did so asked Tecomalman his citizenship. Tecomalman said, "I'm AFI." Agent Battaglini knew that "AFI" was a reference to the Agencia Federal De Investigacion, a Republic of Mexico law enforcement agency. Battaglini said, "You're a Mexican citizen" and Tecomalman said "yes." Battaglini asked Tecomalman if he had immigration documents and Tecomalman said that they were in his hip pack. Battaglini then handcuffed Tecomalman and searched his hip pack. The search revealed an AFI credential, approximately $19,000 pesos in paper currency wrapped in a rubber band, a wallet and a cellular phone.

---

[1] The pistol was a Beretta, model 92 FS, 9mm semi-automatic handgun and the rifle was a Colt model AR-15/A2 Government Carbine, .233 caliber semi-automatic assault rifle. Both weapons were loaded.

4

18. Diaz and Sedano reported to agent Battaglini that Esquivel and Garcia were Mexican citizens without documentation that would permit them to be in the United States. Esquivel told Sedano, among other things that they were lost and did not know they were in the United States.

19. At the scene, Agent Battaglini noticed a hand held Global Positioning device (GPS) laying on the dashboard of the truck. The GPS device was on at the time. Agent Battaglini picked up the GPS device and held it up as Tecomalman watched. Tecomalman volunteered words to the effect, "I had that but I got lost anyway." Tecomalman told Agent Michael Harrington, among other things, that the weapons and the F-150 truck were his. Tecomalman told Harrington they were following footprints and they were unaware they were in the United States.

20. Agents Battaglini, Harrington, Sedano and Diaz searched the F-150 at the scene of the stop. Found in the F-150 were two marijuana cigarettes in the glove compartment; 0.6 grams of methamphetamine located under the driver's seat; 203 rounds of ammunition (142 .233 caliber rounds; 56 9mm rounds; two 12-gauge and one 20-gauge shotgun shell; and two 7.62 mm rounds); bolt cutters; two sets of binoculars; a Kenwood Walkie Talkie radio; night vision goggles; a flashlight; a knife; ski mask; raid vest; digital camera; memory cards and flash drives; five cellular telephones and $1,500 in United States currency. Agents also seized the portable Global Positioning device described in Paragraph 4 above.

21. Tecomalman, Esquivel, and Garcia were transported to the Calexico Border Patrol Station. Immigration record checks revealed that Tecomalman was issued a United States Border Crossing Card (known as a B1/B2 Visa) on December 10, 2003 with an expiration date of December 9, 2013. Agent Battaglini found the actual border crossing card in Tecomalman's wallet which was in the hip pack. During the record check process, United States Border Patrol Agent James Maiga of the Mexican Liaison Unit told Agent Battaglini that the Mexican Government had confirmed that Tecomalaman was an AFI agent. As an ICE agent and former Border Patrol agent I know that a B1/B2 Visa (border crossing card) permits entry into the United States only when the alien presents that card at a United States Port of Entry and upon inspection is thereafter admitted by United States immigration officials into the United States.

22. Border Patrol Agent Seth Sedano advised Tecomalman of his <u>Miranda</u> rights as witnessed

1  by Agent Battaglini.[2/] Tecomalman invoked. Esquivel was advised of his <u>Miranda</u> rights by Border
2  Patrol Agent Paul Torres. Esquivel also invoked.

3      23.    Immigration record checks revealed that Garcia was a citizen of Mexico who was deported
4  on March 6, 2003. According to immigration records, Garcia has not obtained or received permission
5  from the Attorney General or Secretary of Homeland Security to reenter the United States. Record checks
6  also revealed Garcia had been arrested 10 times for illegal entry from 1998 to 2003.

7      24.    Agent Seth Sedano advised Garcia of his <u>Miranda</u> rights as witnessed by Agent Battaglini.
8  Garcia agreed to answer questions. In a video- recorded statement, Garcia said that he was a Mexican
9  citizen born in Mexicali and never had any documents allowing him to enter the United States and that
10 he had previously been removed from the United States. Garcia said that earlier in the day, a person who
11 he worked for but does not know well had called him. Garcia said that this person, who he only knows
12 by a nickname, is an AFI agent in Mexico. Garcia said that he had painted this person's truck before.
13 Garcia said that the AFI agent and another person, who Garcia presumed was also an AFI agent, arrived
14 at Garcia's house and invited him to go to the desert to get some tires off of a truck. Garcia stated that
15 they drove out to the desert looking for the truck, but they did not find it. Garcia said that they then
16 started driving around to get familiar with the area. Garcia stated that they drove out to the sand dunes.
17 Garcia stated that he did not know that they were in the United States. Garcia stated that the AFI Agent
18 driving the truck had a GPS device, which he believed indicated to them that they were still in Mexico.
19 Garcia stated that after finding a road they tried to get their bearings because he thought they were lost.
20 Garcia stated that they did not intend to come into the United States.

21     25.    On September 11, 2007, a federal grand jury returned a one-count indictment charging
22 Tecomalman, Esquivel-Marin, and Garcia-Mesa with being Illegal Aliens in Possession of a Firearm in
23 violation of Title 18, U.S.C. § 922(g)(5)(A) and Aiding and Abetting in violation of Title 18, U.S.C. §
24 2. The indictment also contains a Forfeiture Allegation that provides upon conviction of the offense
25 alleged in the indictment that the defendants shall forfeit all firearms and ammunition involved in the
26 commission of the offense pursuant to Title 18, U.S.C. § 924(d) and Title 28 U.S.C. § 2461(c).

27     26.    All of the defendants, who have been ordered detained without bail, were arraigned on the

---

[2/]    <u>Miranda v. Arizona</u>, 384 U.S. 437 (1966)

1  indictment on September 11, 2007. Defendants are scheduled to appear in this Court on November 29,
2  2007 at 1:30 p.m. for a motions in limine hearing and on December 3, 2007 for trial.

3     27.   Based upon my training and experience and my conversations with the
4  Computer Forensic Group, United States Immigration and Customs Enforcement, San Diego, California,
5  I know that the Global Positioning System ("GPS") is a worldwide radio-navigation system based on a
6  network of satellites in orbit around the earth and their ground stations. GPS-enabled equipment,
7  including the portable Garmin Extrex Legend Global Positioning device seized in this case, uses signals
8  communicated from the satellites ("GPS signals") as reference points to estimate the geographic position
9  of a given electronic device. According the manufacturer, the Garmin Extrex Legend GPS device is
10 capable of automatically and digitally creating what is called a "track log" which are points automatically
11 stored when moving. The Garmin website describes the track log as "the electronic equivalent of laying
12 down a 'breadcrumb trail' to mark your path. According to Garmin, these points will be shown "strung
13 together on the map page" of the GPS device "so you can see where you have been." The GPS device
14 also permits the user to store "waypoints". Garmin describes "waypoints" as locations or landmarks that
15 the user may want to return to.

**SEARCH PROTOCOL**

18    28.   I believe that probable cause exists that the Garmin Etrex Legend Global Positioning
19 Device, Serial Number 12466709, blue in color, contains evidence showing the route of travel of the
20 defendants from Mexico into the United States and showing that on August 26, 2007, the above-named
21 defendants entered the United States from Mexico at a place other than as designated as a United States
22 Port of Entry which would be material to the violations set forth in Paragraph 4 above.

23    29.   Agents of U.S. Immigration and Customs Enforcement will the deliver the Garmin Etrex
24 Legend Global Positioning Device to forensic examiners at the U.S. Immigration and Customs
25 Enforcement Computer Forensics Group in San Diego, California. These examiners may be able to turn
26 on the device and retrieve data using forensic software. The GPS will have to be powered up and turned
27 on by a forensics examiner. The examiner will need to manually examine the GPS device and its
28 functions and record their findings using digital photography. This process is time and labor intensive

1 and, depending upon the workload of the few forensic examiners available, may take several days or
2 longer.

### CONCLUSION

30.  For the forgoing reasons, I request that this Court issue a search warrant for the following search warrant for One Garmin Etrex Legend Global Positioning Device, blue in color, Serial Number 12466709, blue in color which was seized from RICARDO TECOMALMAN-CRUZ, FIDEL ESQUIVEL-MARIN and ROBERTO GARCIA-MESA on August 26, 2007 and in the custody of Special Agent Donald Webster of United States Immigration and Customs Enforcement, which are described in Attachment A and which constitute evidence, fruits, and instrumentalities of offenses in violations of Title 18, United States Code, § 922(g)(5)(A) (Illegal Alien in Possession of Firearms); Title 8, United States Code § 1326 (Deported Alien Found in the United States); Title 8, United States Code § 1324(a)(1)(A) (Bringing in Illegal Aliens); Title 8, United States Code § 1324(a)(1)(A)(ii) (Transportation of Illegal Aliens); Title 21 U.S.C. § 952 and 960 (Importation of Controlled Substances), and Title 21 U.S.C. § 844(a) (Possession of Controlled Substances) and Aiding and Abetting said offenses in violation of Title 18, United States Code § 2 as described in Attachment B.

DONALD WEBSTER
Special Agent
U.S. Immigration and Customs Enforcement

Subscribed to and sworn before me
this _19th_ day of _November_ 2007.

_____
United States Magistrate Judge

8